## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Valerie L. Johnson,                               Civil No. 10-4373 (DWF/JJG)

          Plaintiff,

v.                                                **MEMORANDUM**
                                                  **OPINION AND ORDER**

Michael J. Astrue, Commissioner
of Social Security,

          Defendant.

_____

Charles E. Binder, Esq., Binder & Binder, PC; Ethel Schaen, Esq., Schaen Law Office, counsel for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, United States Attorney's Office, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court upon Plaintiff Valerie L. Johnson's objections (Doc. No. 19) to Magistrate Judge Jeanne J. Graham's December 15, 2011 Report and Recommendation (Doc. No. 17) insofar as it recommends that: (1) Plaintiff's Motion for Summary Judgment be denied; and (2) Defendant's Motion for Summary Judgment be granted. Defendant Commissioner of Social Security Michael J. Astrue filed a response to Plaintiff's objections on January 10, 2012. (Doc. No. 22.) The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The

Court reaches the same decision that was reached by the Administrative Law Judge ("ALJ") and Magistrate Judge Graham, as substantial evidence on the record as a whole supports denying Plaintiff benefits. Consequently, for the reasons set forth below, the Court adopts Magistrate Judge Graham's Report and Recommendation and overrules Plaintiff's objections.

## BACKGROUND

Plaintiff applied for social security disability insurance ("SSDI") on May 9, 2008. (Doc. No. 6 ("Admin. R.") at 138–44.) She alleged a disability onset date of March 19, 2007. (*Id.* at 16.) Plaintiff alleged disability due to obesity, chronic obstructive pulmonary disease ("COPD"), asthma, fibromyalgia syndrome, sacroiliac joint dysfunction, chronic cervical and thoracic musculoligamentous sprain/strain, myofascial pain syndrome, depression, somatoform pain disorder, chronic cephalgia, and general malaise. (*Id.* at 16.) The application was denied initially and upon reconsideration. (*Id.* at 83–84, 85–86.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Lyle Olson on December 14, 2009. (*Id.* at 101–02.) On January 22, 2010, ALJ Olson issued a decision concluding that Plaintiff was not disabled under the Social Security Act, and, therefore, not eligible for disability insurance benefits. (*Id.* at 11–26.) The Appeals Council denied Plaintiff's request for further review on July 28, 2010. (*Id.* at 4–8.) The denial of review rendered the ALJ's decision the final decision of the Commissioner. 42 U.S.C. § 405(g); *Wilburn v. Astrue*, 626 F.3d 999, 1002 (8th Cir. 2010); *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).

Plaintiff sought review in this Court of the Commissioner's decision to deny her application for SSDI.  Cross motions for summary judgment (Doc. Nos. 11 and 14) were referred to Magistrate Judge Jeanne J. Graham for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1.  On December 15, 2011, Magistrate Judge Graham recommended that Plaintiff's motion for summary judgment be denied and Defendant's motion be granted.  (Doc. No. 17.)  The Court adopts the Magistrate Judge's Report and Recommendation because substantial evidence on the record as a whole supports denying Plaintiff disability benefits.  The factual background for the above-entitled matter is clearly and precisely set forth in the Report and Recommendation issued by Magistrate Judge Graham, and is incorporated by reference here.

## DISCUSSION

### I.      Standard of Review

In determining whether to adopt Magistrate Judge Graham's Report and Recommendation, the Court makes a *de novo* determination upon the record, or after additional evidence, of any portion of the Magistrate Judge's disposition to which specific written objection has been made in accordance with Local Rule 72.2(b). D. Minn. LR 72.2(b); *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

Review by this Court of the Commissioner's decision to deny disability benefits to a claimant is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).  "There is a notable difference between

'substantial evidence' and 'substantial evidence on the record as a whole.'" *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision.").  "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Gavin*, 811 F.2d at 1199.  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Id.*  In reviewing the administrative decision, "'[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Id.*  (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ and will defer to the ALJ's well-reasoned determinations of credibility if they are supported in the record by substantial evidence. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993); *Pelkey*, 433 F.3d at 578.  The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a

particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

The claimant bears the burden of proving his or her entitlement to disability insurance benefits and supplemental security income under the Social Security Act. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## II.     Standard for Determining SSDI Eligibility

In determining that a claimant is not entitled to benefits under the Social Security Act, the ALJ must follow the five-step procedure outlined in the Code of Federal Regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). As summarized by the Eighth Circuit, these steps are: (1) whether the claimant is currently engaged in "substantial gainful activity"; (2) "whether the claimant suffers from a severe impairment that "significantly limits the claimant's physical or mental ability to perform basic work activities"; (3) whether the claimant's impairment "meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education and work experience)"; (4) "whether the claimant has the residual functional capacity ["RFC"] to perform his or her past relevant work"; and (5) if

5

the ALJ finds that the claimant is unable to perform the past relevant work, the burden is

on the Commissioner "to prove that there are other jobs in the national economy that the

claimant can perform." *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

## III.   Plaintiff's Objections

Plaintiff argues that Magistrate Judge Graham erred in recommending that

Plaintiff's motion for summary judgment be denied and Defendant's motion for summary

judgment be granted.  In particular, Plaintiff objects to Magistrate Judge Graham's

determination that the ALJ properly discredited the opinions of Plaintiff's physicians and

chiropractor while affording greater weight to the opinion of the state agency medical

consultant.  Plaintiff also argues that the Magistrate Judge incorrectly determined that the

ALJ's credibility analysis was supported by substantial evidence.  For the reasons

explained below, however, the Court concludes that Plaintiff has failed to demonstrate

that the Commissioner's decision was unsupported by substantial evidence.

### A.   Weight Given to Medical Opinions

Plaintiff urges that the Magistrate Judge and ALJ erred in giving substantial

weight to the opinions of a non-treating state agency doctor.  She argues that the opinions

of her treating physicians, Dr. Roper and Dr. Vijayalakshmi, and the opinion of her

chiropractor, Dr. Mickelson, should have received more weight.

By agency regulation, the ALJ must provide good reasons for the weight given to

a treating medical professional's opinion.  20 C.F.R. § 404.1527(d)(2).  The ALJ will

consider all of the following factors in determining the relative weight of medical

opinions:  (1) the examining relationship (an examining source is given more weight than

one who has not examined the individual); (2) the length, nature, and extent of the

treatment relationship (more weight is given to a treating source, and controlling weight

may be given if the evidence is not inconsistent with other substantial evidence in the

case record); (3) supportability (whether relevant evidence exists to support an opinion);

(4) consistency (the more consistent an opinion is with the record on the whole, the more

weight given); and (5) specialization of the medical professional.  20 C.F.R.

§ 404.1527(d).

Generally, the ALJ should give substantial weight to a treating physician's

opinion.  *Id.*; *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).  And when a treating

physician's opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record," the ALJ may give it controlling weight.  20 C.F.R. § 401.1527(d)(2).  But,

as stated above, the ALJ is not required to do so if the opinion is not consistent with the

record as a whole.  *Id.*  Further, an ALJ may reject an opinion that is inconsistent with

other substantial evidence of record.  *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir.

2004).

### 1.    Dr. Maile Roper

After treating Plaintiff at a family medicine clinic three times between July and

October of 2009, Dr. Maile Roper completed a Physical Capacities Evaluation worksheet

in which she opined that Plaintiff's condition precluded her from even sedentary full-time

work.  (Admin. R. at 530–31.)  The ALJ did not give Dr. Roper's opinion controlling

weight, however, finding that the treatment relationship was very brief and that the

opinion was inconsistent with both the record as a whole and Plaintiff's own testimony. (*Id.* at 17, 24, 25.)  Plaintiff objects to this decision.

Plaintiff's medical records include Dr. Roper's impressions from all three visits. On July 14, Dr. Roper noted tenderness in Plaintiff's cervical and AC joints, a sacral torsion, and the presence of fibromyalgia trigger points.  (*Id.* at 543.)  Other than Plaintiff's declared history of past illnesses, the rest of Dr. Roper's findings were generally normal or unremarkable.  (*Id.* at 542–43.)  Dr. Roper recorded nothing about any physical impairments; her impressions regarding Plaintiff's physical state consisted of deconditioning and obesity.  (*Id.* at 543.)  Plaintiff's treatment plan following this visit required only general physical therapy.  (*Id.*)

Dr. Roper recorded similar findings at Plaintiff's August 3, 2009 visit.  (*Id.* at 544.)  Although Dr. Roper reported several sources of pain (including back, neck, shoulder, and muscle aches) and stiffness in Plaintiff's joints and extremities, she recommended only a "vigorous reconditioning program."  (*Id.* at 546–47.)  She noted that Plaintiff had received previous diagnoses of fibromyalgia and myofascial pain syndrome but did not record any independent testing.  (*Id.* at 547.)  Plaintiff reported numerous neurological complaints, including "frequent headaches, weakness, numbness, [and] vertigo," but Dr. Roper described her neurologic condition as "normal."  (*Id.* at 546–47.)  Dr. Roper also noted that Plaintiff reported receiving "adequate" pain relief from her medications.  (*Id.* at 545.)

At Plaintiff's final appointment on October 26, 2009, Dr. Roper completed three forms, including a Physical Capacities Evaluation worksheet ("PCE").  (*Id.* at 530–33.)

In the PCE, Dr. Roper recorded a detailed narrative in which she recounted Plaintiff's self-described condition.  (*Id.* at 530–31, 534.)  Plaintiff reported pain in her back, neck, and joints as well as other stiffness, swelling, and aches.  (*Id.* at 537.)  Dr. Roper's treatment plan called only for Plaintiff to continue her medication regimen.  (*Id.* at 539.)  Still, in the evaluation, Dr. Roper concluded that Plaintiff could not work full-time in even a sedentary position.  (*Id.* at 531.)  Dr. Roper also indicated that Plaintiff could neither sit nor stand for more than one hour during a single eight-hour work day; could never engage in many physical activities; could not use her hands for grasping, pulling, fine manipulation, or repetitive tasks; and could not use her feet for repetitive movements.  (*Id.* at 530–31.)  Dr. Roper further concluded that Plaintiff could not adequately use her hands for any tasks and could never climb, balance, stoop, kneel, crouch, or crawl.  (*Id.* at 531.)

In the Physical Effects of Pain form, Dr. Roper concluded that Plaintiff's pain prevented her from working full-time.  (*Id.* at 532.)  Dr. Roper also rated Plaintiff's pain as "moderate" in the Mental Effects of Pain form, indicating that pain would "[c]onstitute[] a significant handicap with sustained attention and concentration [and] would eliminate skilled work tasks."  (*Id.* at 533.)

This Court concludes that the ALJ properly discounted Dr. Roper's opinion for three reasons:  (1) it contradicts Plaintiff's testimony and contrasts with the record as a whole; (2) it lacks corroborating or supporting medical evidence; and (3) it resulted from a brief treatment history.

First, this Court agrees with the ALJ's conclusion that the opinion contained in Dr. Roper's PCE "contrasts sharply" with the record as a whole—and especially with Plaintiff's own testimony. (*Id.* at 24.) For example, Dr. Roper's opinion states that Plaintiff can never climb, balance, stoop, kneel, or crawl and cannot adequately use her hands to grasp, push, pull, or manipulate. (*Id.* at 531.) Plaintiff testified, however, that she babysits her young grandchildren several times a week, climbs seven stairs into her home without the use of a cane, uses a computer, washes dishes, vacuums her home, dresses herself (by manipulating buttons and zippers), cares for a dog, and drives a vehicle for thirty miles at a time. (*Id.* at 39, 40, 41, 62–63, 65, 67–68.) The ALJ discussed this testimony in weighing Dr. Roper's opinion. (*Id.* at 22, 24.)

Dr. Roper's opinion is also inconsistent with her own observations of Plaintiff as well as her prescribed treatment plans. During Plaintiff's first two visits in July and August, Dr. Roper recorded generally unremarkable findings, limited largely to tenderness, stiffness, and the presence of trigger points. (*Id.* at 542–47.) Dr. Roper did not indicate whether Plaintiff suffered from any impairments. (*Id.*) Further, Dr. Roper first prescribed a treatment plan consisting of one month of physical therapy. (*Id.* at 543.) At Plaintiff's second visit, Dr. Roper recommended "vigorous reconditioning." (*Id.* at 547.) As the ALJ noted, these observations and recommendations "contrast[] sharply" with Dr. Roper's conclusion, on October 26, 2009, that Plaintiff's condition completely precluded sedentary work, sitting for more than an hour, most physical activities, and effectively all use of her hands and feet. (*See id.* at 24.)

Second, no other medical evidence in the record supports Dr. Roper's opinion. For example, as noted by the ALJ, nothing other than the PCE indicates that Plaintiff is unable to sit for up to six hours. (*Id.* at 24.) All of Plaintiff's diagnostic testing and imaging returned normal results, including MRIs and x-rays. (*Id.* at 269, 272, 285, 312, 313, 365, 366.) In particular, Dr. Fennell, an orthopedist, reviewed multiple diagnostic images but found no objective basis for Plaintiff's reports of debilitating pain. (*Id.* at 309, 365, 366.) Nothing in the record suggests that Dr. Roper conducted any independent diagnostics or other medical tests.

Finally, although Plaintiff did visit Dr. Roper multiple times, the Court agrees with the ALJ that three visits between July and October do not establish a lengthy treatment relationship. (*Id.* at 24.) It is especially significant that Dr. Roper examined Plaintiff only twice before completing the PCE at her third appointment. (*Id.*) Although the visits do indicate some degree of a treatment relationship, Dr. Roper's opinion is not consistent with the weight of the evidence. *See* C.F.R. § 404.1527(c)(2). A reduction of the weight given to Dr. Roper's opinion was, therefore, warranted.

### 2.     Dr. Bangalore Vijayalakshmi

Plaintiff also challenges the ALJ's consideration of Dr. Vijayalakshmi's opinion. Dr. Vijayalakshmi, a physical medicine and rehabilitation specialist, saw Plaintiff on four occasions between April 4, 2007 and February 19, 2008. (Admin. R. at 264, 272, 278, 285.) Although Dr. Vijayalakshmi conducted several tests with normal results and prescribed a multi-disciplinary pain management treatment plan, he completed a disability form at Plaintiff's final visit in which he wrote that Plaintiff was not capable of

working at that time.  (*Id.* at 283.)  The ALJ considered Dr. Vijayalakshmi's opinion but gave it "little weight" because the opinion was based on a brief treatment history and was inconsistent with his treatment recommendations.  (*Id.* at 25.)  This Court agrees with the Magistrate Judge and concludes that the ALJ properly discounted Dr. Vijayalakshmi's opinion.

Plaintiff visited Dr. Vijayalakshmi four times.  (*Id.* at 264, 272, 278, 285.)  On April 4, 2007, Dr. Vijayalakshmi examined Plaintiff and found that she possessed complete strength in her upper and lower limbs, had no functional impairments, and experienced some tenderness and discomfort in her shoulders.  (*Id.* at 268–69.)  He reviewed Plaintiff's recent imaging and concluded that the results were normal.  (*Id.* at 269.)  Dr. Vijayalakshmi recorded his impressions that Plaintiff suffered from myofascial pain, dysfunction syndrome of upper and lower quarters, history of fibromyalgia, SI joint dysfunction, and acute exacerbation of two sprains.  (*Id.*)  He recommended that Plaintiff begin using a muscle relaxant, referred Plaintiff to a physical therapy program, and placed her on a one-month work restriction from April 4, 2007 until May 4, 2007.  (*Id.* at 270, 271.)

Dr. Vijayalakshmi examined Plaintiff again on June 19, 2007.  (*Id.* at 285.)  After an electrodiagnostic study, he ruled out carpal tunnel syndrome and recorded entirely normal results.  (*Id.*)  He observed normal strength, sensation, and reflexes.  (*Id.*)  Dr. Vijayalakshmi recommended continued massage therapy and home exercise for pain management.  (*Id.* at 286.)

On August 27, 2007, Dr. Vijayalakshmi noted some tightness and tenderness in Plaintiff's spine, neck, and shoulders.  (*Id.* at 276.)  However, all other impressions were normal and unremarkable.  (*Id.* at 275–76.)  Dr. Vijayalakshmi also completed FMLA paperwork and concluded that, because of Plaintiff's reports of widespread chronic pain, he did not believe that Plaintiff was capable of gainful employment at that time.  (*Id.* at 277.)  He referred Plaintiff to a pain clinic and told her that her primary care physician would need to complete future FMLA paperwork.  (*Id.*)

Plaintiff visited Dr. Vijayalakshmi for a final time on February 19, 2008— "specifically to have her long-term disability paperwork filled out."  (*Id.* at 278.)  At that visit, Dr. Vijayalakshmi again observed functional strength, symmetrical reflexes, some tenderness, and some limited range of motion.  (*Id.* at 281–82.)  He did not record any other new or remarkable findings.  (*Id.*)  Dr. Vijayalakshmi also completed a long-term disability form, in which he stated that Plaintiff was unable to work at that time based on her reports of chronic pain and "typical chronic pain behaviors."  (*Id.* at 283.)  He maintained Plaintiff's treatment plan, and again referred her to a pain clinic, but did not modify her medications or order a follow-up visit.  (*Id.*)

The Court concludes that the ALJ properly discounted Dr. Vijayalakshmi's opinion for the two reasons stated in his Notice of Decision:  (1) the recommended course of treatment was not consistent with a legitimate finding of disability; and (2) the opinion resulted from a brief treatment history.  (*Id.* at 25.)

First, the bulk of the evidence in the record supports the ALJ's conclusion that a finding of disability was inconsistent with the rest of Dr. Vijayalakshmi's treatment

regimen.  Based on several physical examinations and evaluation of imaging results, Dr.

Vijayalakshmi recorded almost entirely unremarkable findings with the exception of

some tenderness, stiffness, and limited range of motion.  (*Id.* at 268–69, 275–76, 281–82,

285.)  He thus recommended a treatment program consisting of massage therapy, home

exercise, a muscle relaxant, and a referral to a pain clinic.  (*Id.* at 270–71, 277, 283, 286.)

When viewed in combination with his clinical records, this treatment plan is strikingly

inconsistent with a finding of disability.  Moreover, like Plaintiff's history with

Dr. Roper, four visits within less than a year do not establish a frequent or comprehensive

treatment relationship that would merit more weight under 20 C.F.R. § 404.1527(c)(2).

Accordingly, the ALJ did not improperly discount Dr. Vijayalakshmi's opinion.

### 3.     Dr. Thomas Mickelson

The ALJ gave no weight to the opinion of Plaintiff's chiropractor, Dr. Thomas

Mickelson.  While a chiropractor is not an "acceptable medical source" as defined in

20 C.F.R. § 404.1513(a), an ALJ may still consider a chiropractor's opinion in

determining the severity of an applicant's impairment.  20 C.F.R. § 404.1513(d).  The

ALJ may consider such an opinion "[i]n addition to evidence from the acceptable medical

sources," but may discount its weight for the same reasons as any medical opinion.

20 C.F.R. § 404.1513(d), 404.1527(d).  The Court concludes that the ALJ did not

improperly reject Dr. Mickelson's opinion.

Dr. Mickelson treated Plaintiff three times:  on July 3, 2008, January 16, 2009, and

January 23, 2009.  (Admin. R. at 495.)  On April 2, 2009, Dr. Mickelson drafted a letter

in which he briefly stated his diagnosis, Plaintiff's subjective complaints, and his opinion

that Plaintiff's chronic pain precluded her from meaningful work.  (*Id.* at 494.)  In

evaluating the letter, the ALJ remarked that Dr. Mickelson's opinion was "quite

conclusory, providing very little explanation of the evidence relied on in forming that

opinion." (*Id.* at 25.)  Accordingly, the ALJ gave it no weight.

In reviewing the letter, the Court agrees that Dr. Mickelson fails to support his

finding of disability with any evidence.  Instead of explaining the rationale for his

diagnosis, Dr. Mickelson repeats Plaintiff's subjective complaints and states that he

"work[ed] from" a diagnosis of "chronic cervical and lumbar strain/sprain syndromes

resulting in cervical brachial syndrome, sciatic neuralgia, myofascitis and myospasms."

(*Id.* at 494.)  The ALJ was entitled to discount this opinion under 20 C.F.R.

§ 404.1527(d)(3).

### 4.    Dr. Aaron Mark

Finally, Plaintiff challenges the ALJ's consideration of the opinion of Dr. Aaron

Mark, the state agency medical consultant.  While the opinion of a non-examining

physician does not constitute substantial evidence independently, an ALJ may

permissibly consider such an opinion as one aspect of a broader record.  *Harvey v.

Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004).  Dr. Mark's opinion consists of a

Physical Residual Functional Capacity Assessment ("PRFCA"), dated June 13, 2008.

(Admin. R. at 438–45.)  In the PRFCA, Dr. Mark concluded that Plaintiff was capable of

light work and recommended several limitations.  (*Id.* at 439–41.)

Dr. Mark provided an explanation for his conclusions in which he cited specific

facts.  (*Id.* at 439–40.)  For example, Dr. Mark referred to evidence that Plaintiff "has

been very poor at best in attending therepy [sic] and she is not regularly doing the exercises that she was prescribed." (*Id.* at 439.)  He also noted that all objective imaging results were unremarkable, that Plaintiff underwent surgeries on each shoulder, and that Plaintiff experiences at least some discomfort and pain.  (*Id.*)  Further, Dr. Mark provided an explanation for his disagreement with Dr. Vijayalakshmi's assessment of Plaintiff's ability to work.  (*Id.* at 444.)  Dr. Mark concluded, as does this Court, that Dr. Vijayalakshmi's finding of disability was not consistent with the rest of the medical evidence in the record.  (*Id.*)  Because Dr. Mark's opinion is both consistent with and generally supported by the rest of the record (including Plaintiff's admitted daily activities and the inconsistency between treating physicians' recorded observations, treatment plans, and ultimate opinions), the ALJ did not improperly afford it "some weight."  (*See id.* at 25.)

## 5. Summary

Given that an ALJ has discretion to weigh all evidence when considering medical testimony and is under no obligation to adopt any one physician's opinion, the ALJ did not wrongly give little or no weight to the opinions of Dr. Roper, Dr. Vijayalakshmi, or Dr. Mickelson.  The opinions of Dr. Roper and Dr. Vijayalakshmi were not consistent with Plaintiff's admitted activities or with the doctors' own conservative treatment plans.  Their opinions also resulted from very brief treatment relationships.  Additionally, Dr. Mickelson's opinion did not cite to any evidence to support his conclusion but simply restated Plaintiff's subjective complaints in a brief and conclusory manner.  *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less

weight to Dr. Harry's opinion, because it was based largely on Kirby's subjective

complaints rather than on objective medical evidence.").  Meanwhile, Dr. Mark

substantiated his opinion with evidentiary support, and his opinion was consistent with

the medical record as a whole.  Thus, the ALJ did not improperly discount the opinions of

Dr. Roper, Dr. Vijayalakshmi, and Dr. Mickelson, while giving some weight to

Dr. Mark's report.

### B.    Credibility Analysis

Plaintiff argues that the ALJ inappropriately discounted her credibility when

evaluating the severity of her impairments.  For the reasons discussed below, the Court

disagrees and concludes that substantial evidence supports the ALJ's credibility

determination.  Following the five-step sequential evaluation required by 20 C.F.R.

§ 404.1520(a)–(f), the ALJ concluded that Plaintiff had the RFC to perform "less than a

full range of sedentary work" with several limitations.[1]  (Admin. R. at 19– 20.)

Considering the factors enunciated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.

---

[1]     The ALJ determined that Plaintiff has the following limitations:
[Plaintiff] can lift and/or carry up to ten pounds occasionally and less than
ten pounds frequently.  [Plaintiff] is able to stand and/or walk (with normal
breaks) for a total of two hours in an 8-hour workday and sit (with normal
breaks) for a total of six hours in an 8-hour workday.  She can occasionally
reach overhead with her left upper extremity, but can never reach overhead
with her right upper extremity.  [Plaintiff] is capable of frequently handling,
fingering, and feeling with her bilateral upper extremities and occasionally
engaging in push/pull operations with her lower extremities.  She cannot
climb ladders, ropes, or scaffolds, but can occasionally climb stairs and
ramps, balance, stoop, kneel, crouch and crawl.  [Plaintiff] needs to avoid
concentrated exposure to extreme cold, extreme heat, humidity, wetness,
dust, odors, fumes and other pulmonary irritants.
(Admin. R. at 19.)

1984), the ALJ further concluded that, although "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," her subjective complaints "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Plaintiff's RFC]." (Admin. R. at 21.)  Plaintiff argues that this credibility assessment was erroneous in four ways.

Plaintiff first argues that the ALJ highlighted some of her daily activities in the record but failed to adequately consider her daily routine, thus overestimating her ability to maintain gainful employment.  Still, "subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322 (citations omitted).  And "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking[] are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (citing *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)).

Here, Plaintiff testified that she occasionally provides overnight child care for her grandchildren, dresses herself, uses a light vacuum cleaner, washes dishes, climbs stairs, cares for a dog, shops for groceries, and drives a car.  (Admin. R. at 39, 40, 41, 62–63, 65, 67–68.)  The Court finds that the ALJ properly indicated that these daily activities did not align with Plaintiff's subjective complaints of debilitating pain.  (*See id.* at 23.) Rather, Plaintiff admits she is capable of several activities, albeit with some limitations. For example, the ALJ accepted Plaintiff's testimony that she can vacuum her home, but that she only uses a light-weight vacuum cleaner.  (*Id.*)  Additionally, Plaintiff is able to

shop for her own groceries if the shopping bags are light. (*Id.*) The inconsistency between her reported activities and complaints of completely debilitating pain thus supports the ALJ's reduction of Plaintiff's credibility. *See Medhaug*, 578 F.3d at 817.

Next, Plaintiff argues that the ALJ inappropriately discounted her complaints of frequent, severe pain, as rated on a 10-point scale. ALJs may properly consider inconsistent statements in conducting a *Polaski* analysis of a claimant's credibility. *Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005); *Talley v. Barnhart*, 113 F. App'x 185, 187 (8th Cir. 2004); *Polaski*, 739 F.2d at 1322. As the ALJ noted, medical record evidence shows that Plaintiff only rated her pain as high as a "10/10 or more" once when speaking to a medical provider. (Admin. R. at 22, 264.) Plaintiff never visited an emergency room and there is no evidence in the record that Plaintiff's physicians ever observed her in acute distress due to pain. (*Id.* at 22.) Indeed, at the only medical visit in which she described her level of pain as a "10/10 or more," the medical provider said she was not in acute distress but rather was "cooperative and in good spirits." (*Id.* at 264, 267.) However, at the administrative hearing, Plaintiff described her pain as regularly reaching a level of 10 in several areas after activity. (*Id.* at 49, 52, 71.) The ALJ did not improperly reduce Plaintiff's credibility in light of these inconsistencies.

Third, Plaintiff argues that it was improper for the ALJ to discount her reports of pain due to fibromyalgia, somatoform pain disorder, and myofascial pain disorder in the absence of objective imaging or laboratory tests because those disorders "cannot be documented by objective testing." (Doc. No. 19, at 8.) However, this argument mischaracterizes both the administrative record and the Magistrate Judge's Report and

Recommendation.  As the Magistrate Judge recognized, the ALJ did not disregard the existence of Plaintiff's claimed impairments due to a lack of objective tests.  (Admin. R. at 21.)  Rather, the ALJ determined that Plaintiff's "medical records document [her] impairments [but] do not support the extent of her claims."  (*Id.*)  The ALJ discounted Plaintiff's accounts of pain related to these disorders because of the inconsistencies between Plaintiff's hearing testimony regarding her pain, her reports to medical providers, and her testimony regarding her daily activities.  (*Id.*)  Substantial evidence in the record supports this determination.  For example, Plaintiff's doctors never described her condition as one of "acute distress" and recommended relatively conservative treatment plans.  (*Id.* at 270, 283, 286, 539, 543, 547.)  Moreover, the ALJ noted that the objective tests in the medical record showed generally normal results and revealed no explanation for Plaintiff's claims of debilitating pain.  (*Id.* at 22, 268–69, 273, 275–76, 285, 319, 365, 366.)

Finally, Plaintiff argues that the ALJ and Magistrate Judge failed to properly consider the capacity of her medications to control her pain-related symptoms.  Notably, the ALJ did not find that medication completely resolved Plaintiff's pain; rather he found that some of Plaintiff's symptoms were controlled by her use of medication.  (Admin. R. at 22.)  For example, although Plaintiff's medical records show that medication has controlled asthma, COPD, and depression symptoms, Plaintiff's hearing testimony is consistent with medical records that show only some pain relief from ice packs, Ibuprofen, and a muscle relaxant.  (*Id.* at 23, 49–50, 55, 59, 64, 279, 297, 299, 312, 388,

545.)  The ALJ noted, however, that Plaintiff has not utilized any "narcotic based pain

relieving medications in spite of her allegations of quite limiting pain."  (*Id.* at 23.)

Still, in determining Plaintiff's RFC, the ALJ acknowledged several work-related

limitations, and took into account all of Plaintiff's symptoms and the extent to which

those symptoms could reasonably be accepted as consistent with the evidence.  (*Id.* at

19.)  Although Plaintiff's limitations do not rise to the level of disability, the Court is

satisfied that the ALJ's consideration of Plaintiff's testimony, including her reports of

pain and level of activity, is supported by substantial evidence on the record as a whole.

## CONCLUSION

While recognizing the difficulties caused by Plaintiff's condition, the Court agrees

with the ALJ's finding that Plaintiff is physically and mentally able to perform "less than

a full range of sedentary work" on a consistent basis and thus does not qualify for SSDI.

(*See id.*)  The Court finds that substantial evidence supports the ALJ's denial of disability

benefits, and therefore, the ALJ's determination must be affirmed.  Therefore, the Court

overrules Plaintiff's objections and adopts Magistrate Judge Graham's

December 15, 2011 Report and Recommendation in all respects.

## ORDER

Based upon the *de novo* review of the record and all of the arguments and

submissions of the parties, and the Court being otherwise duly advised in the premises,

**IT IS HEREBY ORDERED** that:

1.      Plaintiff Valerie L. Johnson's objections (Doc. No. [19]) to Magistrate

Judge Jeanne J. Graham's December 15, 2011 Report and Recommendation are

**OVERRULED**.

2.      Magistrate Judge Jeanne J. Graham's December 15, 2011 Report and

Recommendation (Doc. No. [17]) is **ADOPTED**.

3.      Plaintiff's Motion for Summary Judgment (Doc. No. [11]) is **DENIED**.

4.      Defendant's Motion for Summary Judgment (Doc. No. [14]) is

**GRANTED**.

5.      The decision of the Commissioner of Social Security is **AFFIRMED**.

6.      Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 26, 2012            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge